JL

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tilek Kazakov, | No.   CV-26-00407-PHX-AMM (DMF) |
| Petitioner, | |
| v. | **ORDER** |
| John E. Cantu, et al., | |
| Respondents. | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.) The Court directed Respondents to answer the Petition[1] and permitted Petitioner to file a reply. (Doc. 5.) Upon review of the briefing, the Court will grant the Petition and direct Petitioner's immediate release from custody.

**I.    Background**

Petitioner is a native and citizen of Kyrgyzstan. (Doc. 1 ¶ 33.) Petitioner entered the United States on November 22, 2022 through an official port of entry as an arriving alien to seek asylum. (*Id.* ¶ 35.) He was granted one year of humanitarian parole and was issued a Notice to Appear. (*Id.*) Petitioner was not placed in border detention and immediately entered the United States under ICE supervision. (*Id.*) Petitioner filed an application for asylum in June 2023, which is still pending. (*Id.* ¶¶ 36–37.) He has an individual hearing

---

[1] Although the Court's Order directing Respondents to answer the Petition instructed them to support their response with documentary evidence including, if applicable, affidavits signed under penalty of perjury by individuals with personal knowledge of the factual statements made therein, Respondents submitted no documentary evidence with their response.

scheduled for May 14, 2026. (*Id.* ¶ 37.) Petitioner has fully complied with all his supervision requirements and has no criminal history. (*Id.* ¶ 38.) On December 25, 2025, during a document check-in at a truck stop, Petitioner was detained by Border Patrol officers. (*Id.* ¶ 39.)

## II.    Discussion

Petitioner asserts that when he was paroled into the United States in November 2022, he was presumed as neither a danger to the community nor a flight risk. (*Id.* ¶ 60.) Petitioner contends that, because his asylum application is under review, and it is unclear when his application will be decided, his detention violates his right to due process under the Fifth Amendment. (*Id.* ¶ 63.) Petitioner further argues that his detention "does not bear a reasonable relationship to the two regulatory purposes of immigration detention: preventing danger to the community or flight prior to removal." (*Id.* ¶ 65.) Petitioner also asserts that Respondents "failed to follow the applicable statutory and regulatory provisions to terminate [his] parole and [he] cannot be subject to expedited removal proceedings." (*Id.*)

In response, Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A), not § 1226(a). (Doc. 11 at 3.) Respondents argue that an otherwise-inadmissible alien may be temporarily paroled into the United States for "urgent humanitarian reasons," but an alien released on parole is not considered "admitted to the United States," and, if and when the Secretary revokes parole, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." (*Id.*) Respondents contend that aliens detained under 8 U.S.C. § 1225(b)(2) may be detained through the completion of their removal proceedings without bond, and immigration judges are prohibited from releasing them on bond. (*Id.* at 4.) Respondents assert that "entry" into the United States "requires more than simply arriving on American soil.  For example, an alien who 'arrives at a port of entry—for example, an international airport— . . . is on U. S. soil, but the alien is not considered to have entered

the country.'" (*Id.*) (citation omitted). According to this "entry fiction doctrine," "some individuals within the United States [were], as a result of their status, . . . deemed technically to be outside." (*Id.*) (citation omitted). Respondents argue that "[s]tatutes and case law combine to show that an alien is subject to detention under Section 1225(b)(2)(A) when, like Petitioner, they present at a port of entry for inspection, even if they are paroled thereafter. Thus, Petitioner's detention without bond is statutorily required." (*Id.* at 5.)

Respondents also contend that "as an alien subject to the 'entry fiction,' Petitioner is not entitled to any procedure beyond that which is prescribed by statute." (*Id.*) Respondents assert that Petitioner's procedural due process claim "must fail because he is considered legally not to have entered the United States, even though he is physically present here." (*Id.* at 6.) Finally, Respondents contend that Petitioner's substantive due process claim has no grounding in law, and even if he were entitled to an individualized explanation for the revocation of his parole, "no court has jurisdiction to review Section 1182(d)(5) parole determinations." (*Id.* at 7.)

### A.    Entry Fiction Doctrine

The district court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676-BEM, 2026 WL 521557, at \*29 (D. Mass. Feb. 25, 2026), recently explained why the "entry fiction" urged by Respondents does not foreclose Petitioner's due process claim as to his present detention. According to the "entry-fiction doctrine," "aliens who arrive at ports of entry . . . are treated for due process purposes as if stopped at the border and thus ha[ve] only those rights regarding admission that Congress has provided by statute." *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020) (internal quotation marks omitted)). The district court in *D.V.D.* noted that, in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'" *Id.* at \*30 (quoting *Thuraissigiam*, 591 U.S. at 140). "This distinction arises near the very inception of the entry-fiction case law[.]" *Id.* In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive

- 3 -

authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38). The district court noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*." *Id.* Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).

Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives him of his liberty interests.

*Id.* (citations omitted). Indeed, recent cases confirm an immigration detainee released on parole retains a liberty interest in his release and that "liberty interest [does] not expire along with his parole." *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182 parole); *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *5 (N.D. Cal. Dec. 18, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (internal citation omitted)) ("[T]he government's decision to release an individual after having detained him creates 'an implicit promise' that he will be re-detained only if he violates the conditions of his release. Such conditional release is valuable and must be seen as within the protection of the [Due Process Clause].'").

The Court also notes a growing number of cases that hold that individuals like Petitioner who were released from immigration detention on an order of recognizance are entitled to a pre-deprivation hearing prior to any rearrest or detention as a matter of due process. *See, e.g.*, *Tinoco v. Noem*, __ F. Supp. 3d __, 2025 WL 3567862, at *2, *5–7 (E.D. Cal. Dec. 14, 2025) (granting petitioner's temporary restraining order for immediate release from custody where petitioner was released on an order of release on recognizance, re-detained three years later, and was not given a bond hearing); *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182–84 (D. Haw. 2025) (same); *Aguirre Solis v. Noem*, 2:26-cv-00053-RFB-EJY, 2026 WL 396432, at *2, *5 (D. Nev. Feb. 12, 2026) (concluding petitioner's re-detention after release on recognizance without a hearing and opportunity for release was

unlawful under the INA and the Due Process Clause of the Fifth Amendment and ordering his immediate release from detention).

### B.   *Mathews* Factors

Respondents also do not address the three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). *Mathews* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). This factor favors Petitioner.

As to the second factor, Petitioner asserts that he complied with all the conditions of his Order of Release on Recognizance, and Respondents have produced no contrary evidence. The Court concludes there is a grave risk of erroneous deprivation if previously released individuals can be re-detained without a neutral decisionmaker first evaluating whether re-detention is warranted. This factor also favors Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a

"minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). In addition, here, Respondents' interest is even lower because Petitioner was previously released *after* immigration officials determined he was not a flight risk or danger to the community. *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained."); *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *9 (W.D. Wash. Mar. 12, 2026) (concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations, and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

The Court therefore finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was re-detained. The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy. *See Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025) ("[G]iven Respondents' 'weighty' interest in the 'efficient administration of the immigration laws,' *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing."); *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *6 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release."); *Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

For the foregoing reasons,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to his due process claim in Count One. The remainder of the Petition is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Respondents must **immediately release** Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** that Respondents must provide a notice of compliance within **two (2) business days** of Petitioner's release.

**IT IS FINALLY ORDERED** that any pending motions are **DENIED AS MOOT**. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 16th day of March, 2026.

Honorable Angela M. Martinez
United States District Judge